**FILED**

**AUG 1 5 2007**

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JANIS SCHMIDT, | ) | CIV. 06-5034 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| LARRY BODIN, BIA Supt.; | ) | |
| FREIDA BREWER MARSHALL, BIA | ) | |
| Officer; ROBERT ECOFFEY, BIA AREA | ) | |
| DIR.; BUREAU OF INDIAN AFFAIRS; | ) | |
| OGLALA SIOUX TRIBE; | ) | |
| GERALD BIG CROW; | ) | |
| CONNIE WHIRLWIND HORSE; | ) | |
| DALE VOCU; | ) | |
| DIDIER DUPONT; | ) | |
| LISA F. COOK; | ) | |
| ANN APPLE; | ) | |
| OST TRIBAL POLICE; | ) | |
| CAPTAIN MILTAIN BIANIS; | ) | |
| RED CLOUD INDIAN SCHOOL (aka Holy | ) | |
| Rosary Mission); | ) | |
| FATHER PETER KLINK, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are several motions in relation to Plaintiff Schmidt's civil complaint.

Because the Court concludes that Schmidt's action is malicious and frivolous, it is dismissed

pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## I. LEGAL STANDARD

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

court <u>shall</u> dismiss the case <u>at any time</u> if the court determines that . . . the action . . . is

frivolous or malicious." 28 U.S.C. § 1915(e)(2)(emphasis added). An action is frivolous if "it

lacks an arguable basis in either law or fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 328, 109 S.

Ct. 1827, 104 L.ed.2d 335 (1989).  Additionally, a complaint is factually frivolous "when the

facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are

judicially noticeable facts available to contradict them." <u>Denton v. Hernandez</u>, 504 U.S. 25,

32-33 (1992).  Courts in this Circuit have found that "[a]n action is malicious when it is when

it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a

cognizable right." <u>Carter v. Schafer</u>, 2007 W.L. 1726542 , *1 (E.D. Mo. 2007)(citing <u>Spencer</u>

<u>v. Rhodes</u>, 656 F.Supp. 458, 463 (E.D.N.C. 1987), <u>aff'd</u> 826 F.2d 1059 (4th Cir. 1987).  In

determining whether the action is malicious, the Court can look to "objective factors such as

the circumstances and history surrounding the filing, the tone of the allegations, and whether

probative facts vital to the life of the lawsuit have been alleged. <u>Id.</u>

   The Court, however, must view the complaint liberally.  <u>Haines v. Kerner</u>, 404 U.S.

519, 520 (1972).  All the factual allegations must be weighed in favor of the plaintiff, <u>unless</u>

<u>they are clearly baseless</u>." <u>Hernandez</u>, 504 U.S. at 32-33 (emphasis added).

## II. BACKGROUND

   Plaintiff, Janis Schmidt, although not a tribal member, lived on the Pine Ridge Indian

Reservation for fifteen years.  Amended Complaint ¶¶ 8, 54.  She taught Art and Humanities at

Oglala Lakota College for fourteen years.  <u>Id.</u> ¶¶ 8, 24.  Schmidt states that she is a civil rights

leader.  <u>Id.</u> ¶ 8.  In September of 1996 Louise Big Boy, whose is not a defendant, gave Schmidt

permission to live on a two-acre lot of land near 3 Mile Creek, which Schmidt believed Big

2

Boy owned.[1]  Id. ¶ 25.  Schmidt understood that she could build a house on the land and live there forever and was going to "plant a large garden with fruit trees and . . . resume a disrupted art career."  Id.

Schmidt states that what followed was a conspiracy to remove her from the reservation and a home which was built on land that she admittedly never owned.  The Complaint[2] states that this conspiracy was masterminded by Defendant, Bureau of Indian Affairs (BIA) Area Director Robert Ecoffey who did not like Schmidt's "writing about his fraudulent investigation into the death of AIM activist, Anna Mae Pictou Aquash."  Id. ¶ 11.

Schmidt also states that the eviction was initiated by Defendant Connie Whirlwind Horse.  Id. ¶ 15.  The Complaint states that Whirlwind Horse, non-defendant Calvin Clifford, and Defendant, Vocu were ranchers who resented Schmidt because they were also "illegally leasing and subleasing."  Id. ¶ 26.  The ranchers then attempted to remove Schmidt from the land.  Id. ¶ 28.

Schmidt discovered in May, 2003 that Defendant, Red Cloud Indian School actually owned the two acres where she built her house.  Id. ¶ 33.  There is evidence, however, that Schmidt knew of the school's ownership earlier.  Id. ¶ 35.  Schmidt states that the Catholic Church, which is apparently affiliated with the Red Cloud Indian School, was enlisted by the United States "to help destroy the Lakota Sioux Culture."  Id. ¶ 22.  This was accomplished "by using religion and education as a weapon to destroy the Indian culture.  Id. ¶ 34.  The

---

[1]The record repeatedly indicates that the land in question was a two-acre plot of land, however, Schmidt also claims she lived on a 160-acre plot.  See Amended Complaint ¶ 56.

[2]References to the Complaint will be to the Second Amended Complaint (Docket # 19) unless otherwise noted.

School's President is Defendant Father Peter Klink. Id. ¶ 22.  Father Klink also sold the two

acres of land which Schmidt was living on to the Defendant, Oglala Sioux Tribe. Id. ¶ 23.

Schmidt states that she requested that Father Klink sell the land to her, but that he refused. Id.

¶ 36.  Schmidt describes Father Klink's action as a "conspiracy to evict me from the church

land I was living on." Id. ¶ 37.  In this conspiracy, he "worked very closely with [Defendant]

BIA Superintendent Larry Bodin and Oglala Sioux Tribe." Id.

     In October, 2003, an eviction letter was sent to Schmidt; it was written by Defendant,

Brewer-Marshall and signed by Defendant, Bodin. Id. ¶¶ 38, 39.  Schmidt suggests that the

eviction may have stemmed from Brewer-Marshall coaching "the ranchers and Big Boy on

how to use the BIA to evict" her. Id. ¶ 10.  Schmidt states that this letter, which noted that she

did not own the land, was sent through the United States mail by Bodin, constituting mail

fraud. Id. ¶ 9.

     In December of 2003, after the attempts to evict her began, Schmidt was first asked to

write about Arlo Looking Cloud and the murder of Anna Mae Pictou Aquash. Id. ¶ 42.

Looking Cloud was found guilty of the murder of Pictou Aquash on February 6, 2004.[3]

Schmidt states that her stories prove that Ecoffey "framed up Arlo Looking Cloud for the

murder . . . back in 1975." Id. ¶ 43.  Apparently, Ecoffey manipulated Looking Cloud "to be in

the car with Anna Mae when she was to be killed." Id.  Schmidt also insinuates that Ecoffey

allowed his plan to frame Looking Cloud to lay dormant for twenty years, until he enlisted then

---

[3]See 03-cr-50020, Docket # 113.

U.S. Attorney Karen E. Schreier[4] to offer Looking Cloud a proffer agreement.  Id. ¶ 43.

Ecoffey's plan apparently remained in hiatus for several more years until Looking Cloud was

charged with murder in 2003.  See 03-cr-50020, Docket # 1.

Schmidt also states that Defendant, Dupont, who she describes as a "French national"

was "assigned . . . to Arlo's case without any question" by United States District Judge

Lawrence L. Piersol.[5]  Id. ¶ 44.  Schmidt states that Dupont "hated [her] writing about the

injustice Indians receive in federal court, as based on the phony investigation conducted by

Bob Ecoffey who framed Arlo Looking Cloud for the murder of Anna Mae."  Id.  Schmidt

states that Dupont "was very involved in the trial of Arlo Looking Cloud, preventing Plaintiff

from helping Arlo secure a competent attorney, upon information and belief was working with

Robert Ecoffey to rig Arlo's trial."  3rd Amended Complaint (Docket # 118-2) ¶ 16.

On March 14, 2004 Robert Montileaux, who is not a defendant, moved a trailer home

onto the property.  Amended Complaint ¶ 46.  Schmidt filed a request for a restraining order

with the tribal court in March, 2004.  Id.  On March 24, 2004, Schmidt received a summons

directing her to appear in tribal court on May 7, 2004, regarding the two restraining order

complaints she requested and Big Boy's eviction notice.  Big Boy was represented by

Defendant, Gerald Big Crow.  By May 6, 2004 the land in question was transferred from the

Red Cloud School to the Tribe and then to Big Boy.  Id. ¶¶ 50, 51, and 53.  Apparently,

---

[4]The Honorable Karen E. Schreier is currently the Chief Judge of the District Court of South Dakota and has presided over some of Schmidt's previous unsuccessful lawsuits.

[5]It is unclear what this means, as the record in the Arlo Looking Cloud case does not reference Dupont as an attorney or otherwise.

Schmidt was not involved in the land transaction and the land sale between the parties was "secret." Id. ¶ 53.

On the morning of May 6, 2004, Schmidt informed Defendant Ann Apple, the tribal prosecutor, that she (Schmidt) did not want tribal law to apply to her. Id. ¶ 54. Furthermore, on May 18, 2004 Schmidt attempted to lease the two acres in question, but was denied. Id. ¶ 57. Throughout the Spring of 2004, Schmidt continued to write weekly about how "white America is using the criminal justice system to eliminate Native Americans by framing them up for a felony crime and sending them off." Id. ¶ 60.

On June 1, 2004, Schmidt found that the locks had been removed from her home.[6] Id. ¶ 67. Big Boy, who owned the land, told Schmidt that she was "evicted." Id. Schmidt states that the eviction, ordered by Defendant, Cook was "illegal." 3rd Amended Complaint (Docket # 118-2) ¶ 17. Schmidt was arrested by Defendant, OST Tribal Police for failure to vacate and turned over to Shannon County Sheriff James Daggot, and ordered to stay off the Pine Ridge Indian Reservation. Amended Complaint ¶¶ 68, 69, 73. Schmidt was then transported to the Fall River County Jail in Hot Springs, where she was held for a number of days. Id. ¶ 78. On June 17, 2004, Defendant, Captain Bianis and Sherif Daggot met with the tribal judge to determine how Schmidt can retrieve her *personal* items from the house. Id. ¶ 90. On June 29, 2004 Schmidt returned to the house to retrieve as much as she could, but did not retrieve all of her belongings. Id. ¶ 98.

---

[6]Schmidt claims the house was her "property" despite the fact she admits to never owning the land. Although it is not necessary, nor is the record broad enough, for the Court to make a determination regarding the ownership of the house, typically "real property" means, "Land *and* anything growing, attached to, *or erected on it . . . .*" Black's Law Dictionary 1235 (7th ed. 1999).

On July 7, 2004, Shelly Waters and Stephanie Waters, who are not Defendants, accosted Schmidt verbally. Id. ¶ 99.  They threatened her with a knife and told her to get off of the reservation. Id. They told Schmidt that she was undesirable. Id. Shelly "jumped on the bed, waving a knife, looking at [Schmidt] in the face." Id. Shelly then knocked off Schmidt's glasses and slapped her face. Id. Stephanie called Schmidt foul names and accused her of writing about Arlo Looking Cloud. Id. ¶100.  Stephanie then grabbed Schmidt's hair and began to punch her before fleeing, "in a van." Id.  Stephanie's "auntie" has told Schmidt that the Defendants, particularly Ecoffey, "probably paid the girls to do this." Id.

On September 11, 2004, Schmidt filed a complaint with the Department of Justice regarding these facts. Id. ¶ 106.  The Department of Justice concluded that there was no criminal wrongdoing, fraud, or mail fraud. Id.

On October 14, 2005, tribal President Cecelia Fire Thunder excluded Schmidt from the reservation because she was "an immediate threat and danger." Id. ¶¶ 111, 116, 117.  Schmidt states that this was "totally illegal." Id. ¶ 111.  Schmidt was "removed 4 times by the O.S.T. tribal Police, headed by Police Harold Brewer, who is the a brother to [Defendant] Frieda Brewer-Marshall, arrested 3 times, and jailed twice . . . ." Id. ¶ 115.  After Schmidt fled to Nebraska, she returned to Pine Ridge on December 30, 2005 to attend a tribal meeting. Id. ¶ 118.  Tribal police attempted to arrest her, but she "eluded him by going directly into the meeting." Id.  She then "yelled for help." Id.  Schmidt was subsequently arrested and detained for "about an hour." Id.

Although it is unclear how it is germane to this case, Schmidt also states that Defendant Vocu "shot all of [her] dogs and ran cattle into her yard." Id. ¶ 16.

## III. PROCEDURAL BACKGROUND

**A.    Procedural History**

On May 19, 2005 Schmidt filed civil case 05-5036, in which she sued Big Boy,

Montileaux, Cook, Red Cloud Indian School, Father Peter Klink, Captain Milton Bianas, the

Oglala Sioux Tribe, OST Public Safety, the State of South Dakota, Lance Russell, James

Daggot, and Jeff Terrall.  Schmidt's suit was based largely on the same facts as this case.

Chief Judge Karen Schreier dismissed the claims against the state of South Dakota, the

Oglala Sioux Tribe, OST Public Safety, Captian Bianas, Red Cloud Indian School and Father

Klink on March 2, 2006.  On March 20, 2007 Chief Judge Schreier granted summary judgment

in favor of Daggot, Terrall and Russell.  On March 22, 2007, Chief Judge Schreier entered

judgment for Big Boy and Montileaux as well.

On November 3, 2005, Schmidt filed a second lawsuit, civil case 05-5097, against the

Oglala Sioux Tribe and several of the tribe's leader's stemming from Constitutional violations

she claimed to have suffered as a result of her eviction and subsequent removal from the

reservation.  On May 31, 2006, Chief Judge Schreier granted a motion to dismiss the case.

On May 4, 2006, Schmidt filed this complaint in which she alleges that defendants

violated her federal constitutional and statutory rights by evicting her from her land and

wrongfully detaining her.  Schmidt's Complaint alleges violations of her First, Fourth, Fifth,

Sixth, and Fourteenth Amendment rights.  Schmidt also alleges conspiracy, fraud, abuse of

process, false arrest, assault, battery, libel, intentional and negligent infliction of emotional

distress, negligence, and violations of 18 U.S.C. § 242, a criminal statute.

8

**B.**     **Pending Motions**

Pending before the Court are the following motions:

(1)     "Answer to Second Amended Complaint and Motion to Dismiss" [doc. #58], filed by the Tribal Defendants.

(2)     "Motion for Leave of Court to Amend Answer Filed December 28, 2006" [doc. #64], filed by Defendant Lisa Cook.

(3)     "Motion to Dismiss with Prejudice" [doc. #66], filed by Defendant Lisa Cook.

(4)     "Motion for Sanctions Against Plaintiff" [doc. #68], Defendant Lisa Cook.

(5)     "Motion to Reject Defendant Lisa Cook's Motion to Dismiss with Prejudice and Affidavit" [doc. #78], filed by the Plaintiff.

(6)     "Motion to Reject Defendant Lisa Cook's Motion for Sanctions" [doc. #79], filed by Plaintiff

(7)     "Amend Motion to Amend Answer" [doc. #105], filed by Defendant Lisa Cook.

(8)     "Motion to Strike Lisa Cook's Affidavit and Defendants Oglala Sioux Tribe, Big Crow, Cook, Apple, OST Tribal Police, and Bianis' Amended Motion and Sanctions" [doc. #106], filed by the Plaintiff.

(9)     "Motion to Dismiss Plaintiff's Second Amended Complaint" [doc. #108], filed by the Federal Defendants.

(10)     "Motion for Time to Find Federal Defendant Larry Bodin to be Served" [doc. #115], filed by the Plaintiff.

(11)     "Motion to Amend Second Complaint" [doc. #116], filed by the Plaintiff.

(12)     "Motion to Reject Defendants BIA, Ecoffey, Bodin, and Marshall's Motion to Dismiss Second Amended Complaint" [doc. #117], filed by the Plaintiff.

(13)   "Motion Add as Defendant Fall River County and Enlist U.S. Marshal Serve Summons and Complaint" [doc. #120], filed by the Plaintiff

(14)   "Motion to Have U.S. Marshals Serve Summons and Complaint on Defendant Larry A. Bodin" [doc. #121], filed by the Plaintiff.

(15)   "Motion for Leave to Amend Answer" [doc. #122], filed by the Tribal Defendants.

(16)   "Motion for U.S. Marshals to Serve Summons and 3rd Amended Complaint to Lance Russell, James Daggot, and Jeff Terrall Louise Big Boy, and Robert Montileaux" [doc. #130], filed by the Plaintiff.

(17)   "Motion for Interlocutory Appeal of Orders Denying Plaintiff Leave to Amend her Complaint" [doc. #131], filed by the Plaintiff.

(18)   "Motion to Accept and Process 3rd Amended Complaint" [doc. #132], filed by the Plaintiff.

(19)   "Motion to Declare BIA Defendants Bodin, Marshall, and Ecoffey Suspected of Mail Fraud" [doc. #133], filed by the Plaintiff.

(20)   "Motion for Reconsideration and to Amend to Add the Defendants Lance Russell, James Daggot, and Jeff Terrall Louise Big Boy, and Robert Montileaux" [doc. #134], filed by the Plaintiff.

(21)   "Motion to Strike Interlopers, or to Add Russell, Daggot, and Terrall as Defendants" [doc. #138], filed by the Plaintiff.

## IV. DISCUSSION

**A.**   **Schmidt's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)**

Defendants, United States, Bureau of Indian Affairs, Ecoffey, Bodin, and Marshal (the Federal Defendants) filed a motion to dismiss pursuant to 28 U.S.C. § 1915(d),[7] and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court has reviewed Schmidt's Complaint

---

[7]The Statute previously codified at 18 U.S.C. § 1915(d) is now codified at §1915(e).

and concludes that Schmidt's it is malicious and factually frivolous and must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(I).

### 1.   Schmidt's Complaint is Frivolous

Schmidt's Complaint lacks an arguable basis in law and fact.  Over the last several years, she has filed multiple lawsuits stemming from her eviction from the land at 3 Mile Creek, land in which she admits she never had an ownership interest.  Opposition to Defendant's Bodin, Marshall, and Ecoffey's Motion to Dismiss (Docket # 118) at 30 (stating "I have stated I owned property on land that I didn't own").  See also Amended Complaint ¶¶ 27, 33.  When her suits have been unsuccessful, she has filed subsequent suits, sometimes naming the same parties, sometimes adding others to her tangled conspiracy.  In the past, she has attempted to sue a Federal Judge who ruled against her and has implicated the Judge in her conspiracy.[8]  At this rate one wonders how long it is until the entire State of South Dakota is implicated in her various lawsuits.  Schmidt's Complaint is the very definition of frivolity.

Additionally the Court finds that the facts alleged in Schmidt's Amended Complaint, and her Third Amended Complaint which the Court will address later, rise to the level of the irrational and the wholly incredible.  Her complaint is voluminous, occasionally unintelligible, and at times senseless.  The action is an irrational, sweeping allegation of conspiracy, lacking a factual basis.  Particularly troubling is that she claims that the conspiracy to evict her and remove her from the reservation was a reaction to her writings regarding Arlo Looking Cloud,

---

[8]See Schmidt v. Schreier, Case No. 2:07-cv-36 (District of North Dakota).  Schmidt's suit against Chief Judge Karen Schreier was also dismissed pursuant 28 U.S.C. § 1915(e)(2).  That court found Schmidt's complaint and conspiracy theories to be "irrational and wholly incredible."

despite the fact that she admits that the parties were already seeking eviction months, if not years before she ever started writing about Looking Cloud.  Accordingly, her suit should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## 2.    Schmidt's Complaint is Malicious

Because her Complaint is also malicious, it should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

This Court finds that Schmidt's action has been undertaken, not for the purpose of vindicating her rights, but for the purpose of harassing litigants, both present and former.  At times it seems that Schmidt's filings are copied and pasted from the internet, in an attempt to introduce evidence of a vast conspiracy against Indian people into the record.  In some instances, these passages have consisted of pages of Supreme Court and lower court decisions, that are not on point, but rather serve as an attempt to inflame the defendants and the Court.[9]

Indeed, when the Court considers objective factors including the history surrounding the filing and the tone of the allegations, it seems that Schmidt has brought suit against several of the defendants solely to expose what she believes to be their involvement in a conspiracy related to convicted murderer, Arlo Looking Cloud.  Schmidt states, "Bob Ecoffey, who had

---

[9]In one of her filings, "Opposition to Defendants OST Tribal Police, Oglala Sioux Tribe, Apple, Big Crowm Lisa Cook, and Bianis' Motion to Dismiss" (Docket # 77), Schmidt includes nearly seven pages of such text.  While some passages in this memorandum are actually uncited text from the Supreme Court's decision in Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245, 67 L.Ed.2d 493 (1981), a passage pertaining to the existence of tribal sovereign immunity from suit is actually transcribed nearly part and parcel from an article written by Jordan S. Dill and found on the internet at www.dickshovel.com/ToShout.html.  Although it is unclear whether or not Schmidt has permission to use Dill's apparently copyrighted material, it is clear that her attempt to mold To Shout Into The Wind, Dill's article concerning the general principles of sovereignty and tribal rights, into an argument against a tribal entity's immunity from suit failed miserably.

12

his own personal reasons for wanting to see me evicted, because of my writing about his fraudulent investigation into the murder of Anna Mae Pictou Aquash." Opposition to Defendant's Bodin, Marshall, and Ecoffey's Motion to Dismiss (Docket # 118) at 3. This indicates not only maliciousness, but also illustrates the incredibleness of Schmidt's complaint. She continues, "Each Defendant had a reason to silence and get rid of Schmidt." Id. at 4. Later Schmidt states, "Intent of the Federal Defendants Bodin, Ecoffey, and Marshall was not to settle any claims, but to punish me for having written and published my views on BIA land operation and Ecoffey's fraudulent investigation into the murder of Anna Mae Pictou Aquash, and the subsequent indictment of an innocent Lakota, Arlo Looking Cloud based on a Proffer Agreement written by U.S. Attorney Karen Schreier." Id. at 28-29. This is nonsensical because Schmidt admits that she did not start writing about Arlo Looking Cloud until December, 2003. It is difficult for the Court, therefore, to believe that the defendants conspired against her and removed her from the land because of the Looking Cloud issue, when the chain of events was set in motion before she admits writing about Looking Cloud.

Also troubling is that although Schmidt rambles on at length regarding the issue of Arlo Looking Cloud, she will not tolerate the defendants broaching the issue. Id. (stating "Discussions by Mr. Gusinsky regarding Karen Schreier, Arlo Looking Cloud, or the Catholic Church has no bearing on the case at hand"). Also troubling is Schmidt's propensity to file suit against a party after the party has been dismissed from a prior law suit, regarding the same set of facts. In particular, Schmidt sued Judge Lisa Cook in this action, weeks after she had been dismissed from a prior lawsuit, asserting the same facts. Additionally, Schmidt has attempted to add Lance Russell, James Daggot, and Jeff Terrall to this lawsuit, despite several

13

rulings by both Judge Schreier and this Court to the contrary. The Court finds not only the fact that she repeatedly attempts to sue the same parties under the same set of facts, but also the tone of her filings, to indicate her malicious intent.

While the Court finds strong evidence of maliciousness in the history surrounding the filing, the docket as a whole, and in the tone of the allegations, the Complaint itself is larded with evidence to support dismissal. In paragraph 11, Schmidt quotes almost exclusively from the Arlo Looking Cloud transcript and makes allegations against Ecoffey regarding Arlo Looking Cloud. In paragraphs 16 and 17, Schmidt references Defendant Dupont's connection with Arlo Looking Cloud and also accuses Defendant Vocu of shooting her dogs. In paragraph 21, Schmidt accuses the Federal Government, without evidence, of conspiring with the Catholic Church to destroy Lakota culture. Schmidt also dedicates much of paragraphs 43 and 44 to the issue of the Arlo Looking Cloud trial. She again alludes to the Looking Cloud issue in paragraph 60, stating "white America is now using the criminal justice system to eliminate Native Americans by framing them up for a felony crime and sending them off." Notwithstanding any rights of Schmidt's which may have been violated in relation to the incidents at 3 Mile Creek, the Court is convinced that this suit was brought to harass the litigants, former litigants, and potential litigants, not to vindicate those rights. Accordingly her case should be dismissed forthwith.

**B.**    **Additional Pro Se Motions Filed by Lisa Cook and Related Filings**

On December 28, 2007, Mario Gonzalez filed a notice of appearance as lead attorney for several Defendants, including Lisa Cook. (Docket # 56). Simultaneously, Gonzalez filed a motion to dismiss on behalf of the several Defendants, including Cook. (Docket # 58). On

January 8, 2007, Defendant Cook filed a notice of appearance pro se on behalf of herself.
(Docket # 62).  In her notice, Cook clearly states that she is representing her self pro se.[10]

Cook then filed several motions on her own behalf, despite the fact the was represented by Gonzalez.  Cook has filed a motion for leave of court (Docket # 64), a second motion to dismiss (Docket # 66), a motion for sanctions (Docket # 68), and a motion to amend (Docket #105).  These motions have prompted Schmidt to respond with several motions of her own, a motion to reject Cook's motion to dismiss (Docket # 78), a motion to reject Cook's motion for sanctions (Docket # 79), and a motion to strike (Docket # 106).

At no point has Cook or Gonzalez indicated that Gonzalez is no longer representing Cook.  Particularly troubling to the Court is that Cook now has two pending motions to dismiss.  Simply put, Cook needs to pick a horse and ride it.

The policy of the Eighth Circuit is to "not consider pro se filings when a party is represented by counsel." United States v. Copley, 2007 WL 812002, *1, n. 1 (8th Cir. 2007).  The District Courts in this Circuit also adhere to this policy.  See United States v. Hemphill, 2007 WL 54102, *1 (N.D. Iowa 2007)(calling a pro se filing by a criminal defendant who was represented by counsel "impermissible"); Turner v. Gammon, 2006 WL 2598322, *9 (E.D. Mo. 2006).  The court will adhere to the Eighth Circuit policy and will not consider Docket numbers 64, 66, 68, and 105, regardless of its decision to dismiss.  As a result Docket numbers 78, 79, and 106 are moot and would not be considered, even if the Court was not dismissing

---

[10]The record suggests, and the Court is aware that Cook is, or at least previously was a licensed attorney in the State of South Dakota and in the District of South Dakota.

Schmidt's Complaint pursuant to § 1915. Likewise, Cook's response to Docket numbers 106, 113, and 114, whould also not be considered.

**C.     Motions to Serve Larry Bodin (Docket ## 115 and 121)**

Schmidt has filed two separate motions to serve Defendant, Larry Bodin. Federal Rule of Civil Procedure 4(m) requires that service of the summons and complaint must be completed within 120 days of the filing. The instant action was filed on May 4, 2006. The record indicates that summons were issued as to Bodin on May 31, 2006 and November 27, 2006. The record does not indicate that Bodin was ever served. Indeed the record indicates that a summons was returned unexecuted on December 15, 2006. Regardless, Bodin was not served within 120 days, as required by Rule 4(m).

Rule 4(m), however, does allow the Court to extend the time for service upon showing of good cause for the failure. Schmidt does not show good cause for her failure to secure service. In fact, her single-sentence motions don't identify any reason whatsoever. Because Schmidt has not show good cause for this court to extend the time to serve Bodin, her motions are denied.

Additionally, the Court's local rules require that "a brief containing the specific points or propositions of law with the authorities in support thereof on which the moving party will rely" be "filed with the Clerk with every motion raising a question of law." D.S.D. CIV. LR 7.2. Schmidt's motion raises a question of law, but was not accompanied by a written brief as required by local rule 7.2(A). For this additional reason, Schmidt's motion should be denied.

**D.    Motion to add Fall River County as a Defendant (Docket # 120)**

Schmidt has filed a motion requesting that this Court add Fall River County as a defendant.  The Court's local rules require that "a brief containing the specific points or propositions of law with the authorities in support thereof on which the moving party will rely" be "filed with the Clerk with every motion raising a question of law."  D.S.D. CIV. LR 7.2. Schmidt's motion raises a question of law, but was not accompanied by a written brief as required by local rule 7.2(A).  For this reason, Schmidt's motion should be denied.

**E.    Motions Concerning Addition of Defendants (Docket ## 134, 138)**

Schmidt has filed a motion for the Court to reconsider its decision to not allow her to add Russell, Daggot, Terrall, Big Boy, Montileaux as defendants.  See Docket ## 93, 99.  The Federal Rules of Civil Procedure do not provide for a "motion to reconsider."  In re Trout, 984 F.2d 977, 978 (8th Cir. 1993).  The Eighth Circuit has instructed courts to consider motions to reconsider either under Rule 59(e) or Rule 60(b).  Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999).  While Rule 60 allows for relief from both orders and judgments, Rule 59 only pertains to judgments.  Here, the court construes Schmidt's motion as a motion for relief from judgment or order pursuant to Rule 60(b).  "Rule 60(b) 'provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances.' "  Reyher v. Champion Int'l Corp., 975 F.2d 483, 488 (8th Cir. 1992) (quoting United States v. Young, 806 F.2d 805, 806 (8th Cir. 1986)).  Such motions are disfavored.  Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 515 (8th Cir. 1984).  Schmidt has not shown "exceptional circumstances" to overcome the issue of res judicata and this Court's previous rulings.  For this

17

reason, and for the reasons noted by the Court in Docket # 99, Schmidt's motion must be denied.

Schmidt also filed a motion to strike Russell, Dagott, and Terall's responses to her various motions, presumably pursuant to Rule 12(f). The Court's local rules, however, require that "a brief containing the specific points or propositions of law with the authorities in support thereof on which the moving party will rely" be "filed with the Clerk with every motion raising a question of law." D.S.D. CIV. LR 7.2. Schmidt's motion raises a question of law, but was not accompanied by a written brief as required by local rule 7.2(A). For this reason, Schmidt's motion should be denied.

**F.      Motion Concerning Mail Fraud (Docket # 133)**

Schmidt filed a motion demanding that this court order an investigation "leading to the arrest and conviction"of Ecoffey and Marshal for violations of 18 U.S.C. § 1341. Notwithstanding, Schmidt's flawed interpretation of American civics, this Court will not instruct the United State's Attorney's Office as to which alleged crimes it should investigate, as the decision to prosecute is solely in their discretion. See Wayte v. United States, 470 U.S. 598, 607-608, 105 S. Ct. 1524, 84 L.Ed.2d 547 (1985) (discussing the United State's Attorney's Office's "broad discretion"). Additionally, Schmidt admits in her Amended Complaint that the Department of Justice has already investigated this issue and determined that no fraud, mail or otherwise, existed.

Additionally, the Court's local rules require that "a brief containing the specific points or propositions of law with the authorities in support thereof on which the moving party will rely" be "filed with the Clerk with every motion raising a question of law." D.S.D. CIV. LR

7.2. Schmidt's motion raises a question of law, but was not accompanied by a written brief as required by local rule 7.2(A).

Finally, there is not a private right of action for violations of 18 U.S.C. § 1341. Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 407-409 (8th Cir. 1999). For all these reasons, Schmidt's motion should be denied.

**G.   Motions Regarding Amending of Complaint (Docket ## 116, 130, and 132)**

Schmidt filed her original Complaint (Docket # 1) on May 4, 2006. On November 22, 2006, Schmidt filed her Amended Complaint (Docket # 17). On November 27, 2006, Schmidt filed a Second Amended Complaint.[11] On November 28, 2006, the Court ordered that both Docket # 17 and Docket # 19 be served on the Defendants. Schmidt has now filed several more motions in an attempt to amend her complaint again.

Fed. R. Civ. P. 15(a) governs the amendment of pleadings. According to Rule 15(a), a party can amend a pleading in one of three instances. First, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." Second, a party can amend by "written consent of the adverse party." In a case such as this, where neither one or two are satisfied, then the party can only amend by "leave of the court."

Rule 15(a) states that leave to amend "shall be freely given when justice so requires." The liberal thrust of the Federal Rules of Civil Procedure promote granting leave to amend. See Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001). "'Only limited circumstances justify a district court's refusal to grant leave to amend pleadings: undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the

---

[11]Both Docket # 17 and Docket # 19 were captioned "Amended Complaint."

opposing party.'" Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fid. Life Ins. Co., 958 F.2d 836, 839 (8th Cir. 1992) (quoting Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987)); see also Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 229, 9 L. Ed. 2d 222 (1962).

The Court determines that Schmidt's motions to amend are made in bad faith and would cause undue delay. If allowed, the 3rd Amended Complaint would be the fourth Complaint filed in this case. Moreover, Schmidt has raised similar claims in other lawsuits. At some point she, like Cook, needs to pick a horse and ride it. In the court's determination, Schmidt's attempt to amend her complaint is nothing more than an attempt to correct the flaws and legal mistakes pointed out by the Government in their motion to dismiss and to circumvent this Court's orders denying the inclusion of additional defendants. Schmidt should not be allowed to chip away at every argument Defendants raise by filing another 80-100 page complaint. If Schmidt were allowed to file another complaint it would unduly delay litigation that is malicious, frivolous and, in dire need off closure.

Additionally, Schmidt's attempts to amend her complaint would be futile. The Court has reviewed Schmidt's 3rd Amended Complaint and is convinced that it does not cure the maliciousness or frivolity of the Amended Complaint (Docket # 19). In fact, the 3rd Amended Complaint might be even a stronger example of the actions frivolity and maliciousness. Therefore Schmidt's motions should be denied.

**H.    Motion for Interlocutory Appeal (Docket #131)**

Schmidt has filed a motion for interlocutory appeal pursuant to 28 U.S.C. § 1292. Docket # 131. Schmidt requests that the Court "certify an *appeal* for interlocutory Order."

Docket # 131 (emphasis added). Section 1292(b) permits a district court, in its own discretion, to certify an *order* for interlocutory appeal if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "immediate appeal from the order may materially advance the ultimate termination of the litigation." Schmidt does not specify which orders she wants certified for appeal. Moreover, the Court can not find an order in the instant case which "involves a controlling question of law as to which there is substantial ground for difference of opinion" for which "immediate appeal from the order [would] materially advance the ultimate termination of the litigation." Schmidt's motion does not indicate what controlling issue of law is in question in this case. Additionally, since the Court is dismissing Schmidt's action in its entirety, an appeal would have no effect on advancing the termination of the litigation. For these reasons, Schmidt's motion is denied.

Based on the foregoing, it is hereby

ORDERED that Defendant's motion to dismiss (Docket # 108 ) is GRANTED. Schmidt's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

IT IS FURTHER ORDERED that Defendant's motion to dismiss (Docket # 58) is DENIED as moot.

IT IS FURTHER ORDERED that Cook's motion to amend/correct (Docket # 64) is DENIED.

IT IS FURTHER ORDERED that Cook's motion to dismiss (Docket # 66) is DENIED.

IT IS FURTHER ORDERED that Cook's motion for sanction (Docket # 68) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion to reject Cook's motion to dismiss (Docket # 78) is DENIED as moot.

IT IS FURTHER ORDERED that Schmidt's motion to reject Cook's motion for sanctions (Docket # 79) is DENIED as moot.

IT IS FURTHER ORDERED that Cook's motion to amend/correct (Docket # 105) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion to strike Cook's motion to amend correct (Docket # 106) is DENIED as moot.

IT IS FURTHER ORDERED that Schmidt's motion for leave to serve Larry Bodin (Docket # 115) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion to amend/correct (Docket # 116) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion to reject Bodin and Marshal's motion to dismiss (Docket # 117) is DENIED as moot.

IT IS FURTHER ORDERED that Schmidt's motion for leave to add Fall River County (Docket # 120) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion for Marshals Service to serve Larry Bodin (Docket # 121) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion to amend/correct (Docket # 122) is DENIED as moot.

IT IS FURTHER ORDERED that Schmidt's motion for Marshals Service to serve summons (Docket # 130) is DENIED.

22

IT IS FURTHER ORDERED that Schmidt's motion for interlocutory appeal (Docket # 131) is DENIED as moot.

IT IS FURTHER ORDERED that Schmidt's motion to amend/correct (Docket # 132) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion to declare Bodin, Marshal, and Ecoffey suspected of mail fraud (Docket # 133) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion for reconsideration (Docket # 134) is DENIED.

IT IS FURTHER ORDERED that Schmidt's motion for leave to strike interlopers or to add defendants (Docket # 138) is DENIED.

Dated this 15th day of August, 2007.

BY THE COURT:

ANDREW W. BOGUE
SENIOR DISTRICT JUDGE